Branner v. Branner.

### BRANNER v. BRANNER.

CONVERSION. The president of a railroad company gratuitously loaned to his brother bonds of the State issued to the company under the internal improvement laws of the State, which the latter simply obligated himself to return upon request, meaning that he would return similar bonds or their equivalent. *Held*, a conversion, and that both brothers were liable to the company for the value of the bonds at the time, with interest, the borrower, under the circumstances, being primarily liable.

---

FROM JEFFERSON.

---

Appeal from the Chancery Court at Dandridge. H. C. SMITH, Ch.

MCFARLAND, CALDWELL & SON for complainant.

BARTON, SHIELDS & YOE for defendants.

COOPER, J., delivered the opinion of the court.

On the 1st of March, 1867, John R. Branner, as President of the East Tennessee and Virginia Railroad Company, loaned to his brother, the complainant, G. M. Branner, ten bonds of the State of Tennessee for $1,000 each, and complainant thereupon acknowledged in writing that he had "borrowed of the E. T. & V. R. R. Co." the said bonds, describing them as being "new issue bonds, issued under act of December 10, 1866," and promising "to return them when called for." John R. Branner died in February, 1869, having continued to be the president of the

said railroad company until shortly before his death. He made a will appointing complainant and the defendants, B. M. Branner and John Talbot, his executors, who qualified as such. The original bill was filed on the 6th of December, 1870, against the complainant's co-executors and the railroad company, admitting the borrowing of the bonds as above, construing the obligation as binding him to return the bonds, "or similar bonds or their equivalent," when called for, and claiming that he had, about the 1st of July, 1868, delivered to John R. Branner, as president of the company, and upon his request, other like bonds in satisfaction of his obligation. The delivery is alleged to have been made in the city of New York, for the purpose of enabling John R. Branner, as president of the company, to pay the instalment of interest due on that day from the company on the bonds issued to it by the State of. Tennessee. The bill concedes that the interest was not paid, its payment having been prevented by third persons, and that it does not appear what disposition was ever made by John R. Branner of the bonds so delivered to him. The complainant took no receipt, nor was his obligation ever surrendered to him. He suggests in his bill that, owing to his position as executor of his brother's will, it is proper to bring his co-executors and the railroad company before the court "for an adjustment of their respective rights."

The co-executors, in their answer, say that shortly after their qualification one of them, B. M. Branner, in examining the accounts of the testator with the

railroad company, was "notified of the obligation of the complainant." They know nothing, they add, of the facts in relation to said obligation, nor of the payment of the bonds by complainant to their testator as alleged, and require proof.

The railroad company says that John R. Branner loaned the ten bonds to complainant, who executed therefor his obligation as above. It insists that John R. Branner, as its president, had no right or power to loan the bonds, and that in so doing he and the complainant were guilty of a conversion, and became jointly liable for the bonds. It knows nothing of the alleged payment by the complainant to John R. Branner, and says that the loan has never been re-paid to the company. It concedes that the whole matter should be settled in one suit, and to this end files its answer as a cross-bill, and asks that the complainant and the executors of John R. Branner "be held jointly liable for the value of said bonds, and interest."

It was agreed by the parties that the original bill and the answer of the co-executors thereto should be taken as answers to the cross-bill.

The deposition of G. M. Branner was taken on his own behalf, in which he states that the bonds were loaned to him by John R. Branner as president of the railroad company, and details the circumstances which led to the payment of the bonds to John R. Branner in New York, and deposes to the payment as alleged in his bill. There is testimony sustaining him in regard to the circumstances preceding the al-

leged payment, but no other proof of the payment itself.

The original bill recognizes the company's right to have satisfaction for its bonds, while it seeks to establish the payment to John R. Branner. The co-executors, in their answer, recognize the fact that the object of the bill is to adjust the equities between the brothers, and admit the liability of their testator's estate if the payment claimed is established. Without considering the rights of the estate as prejudiced by these admissions, it is clear that no issue is made by the pleadings touching the property of the railroad in the bonds borrowed, and the fact that the transaction was originally made between the brothers. The testimony of G. M. Branner is, moreover, clear upon these points, and is competent as between the company and the executors.

In this view the transaction was unauthorized, not merely because of the purposes impressed upon the bonds by the acts under which they were issued, but upon general principles. It was a loaning and borrowing of the funds of the railroad company by the express terms of the obligation executed and received. It was so treated by the parties to it, the bonds received by the complainant having been used for his own purposes, and new bonds procured with which to replace them. Such a use of the bonds was in plain violation of the trust impressed upon them by the acts of the Legislature authorizing their issuance. And such a use by the president and a third person with knowledge, of even the ordinary funds of a corpora-

tion, would be without authority, and wrongful, and, at the election of the company, a conversion. I know of no law which confers upon the president of a railroad company the power to loan the funds of the company gratuitously to a brother, or any other man. The intentionally depriving the owner of his goods, though for the benefit of a third person, is a converson. Big. on Torts, 199; *Scruggs* v. *Davis,* 5 Sneed, 261. The railroad company is entitled to a decree against G. M. Branner and the executors of John R. Branner, jointly, for the value of the bonds on the 1st of March, 1867, with interest.

Although G. M. Branner is a competent witness as between the complainant in the cross-bill and the executors of John R. Branner, he is incompetent, by the terms of the statute, in the litigation under the original bill, between himself and his brother's estate. Code, sec. 3813*d.* There is no testimony, therefore, to establish the actual delivery of the bonds by him to John R. Branner about the 1st of July, 1868, as claimed.

All that can be said of the other testimony is, that it is persuasive of the general truth of the narrative of the original bill. The gravamen of the statement, however, is that the bonds were procured for a specific purpose, namely, the payment of interest on the 1st of July, 1868. The bill concedes that no such payment was made, and that there is nothing to show the disposition of so large a fund by John R. Branner. It is obvious that if the object for calling in the loan was prevented, the payment

itself might also be postponed. At any rate, the complainant comes into court affirming a fact, and the burden is on him to establish it to the reasonable satisfaction of the court. The evidence introduced is, at most, only persuasive, not convincing. It is not sufficient to charge the estate of the deceased with the primary liability; nor is there any reason for changing the order of liability evidenced by the written obligation. If John R. Branner's executors, after the estate had been jointly charged because of a conversion by the testator, were in court for the purpose of shifting the burden to his colleague, in the wrong, the court might have some difficulty in acting, notwithstanding the recent modification of the old rules on this subject. *Selz* v. *Unna* 6 Wal., 327, 336. But the complainant had previously come into court for the express purpose of having the equities between himself and his brother's estate adjusted, and the co-executors have agreed that this should be done. Under these circumstances no principle is violated in holding that the original complainant is primarily liable, as between him and his brother's estate, and declaring the rights of the parties accordingly.

In the progress of this cause William M. Branner, upon his own application, was appointed by the Chancery Court special administrator of the estate of John R. Branner, and filed an answer. The proceeding was without authority of law, and void.

William M. Branner will be charged with all the costs incident to this action, and G. M. Branner will pay the residue of the costs.